UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:09CV-440-H

DANA BOWERS, et al.                                                                      PLAINTIFF(S)

V.

WINDSTREAM KENTUCKY EAST, LLC, et al.                                          DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Plaintiffs, Dana Bowers and Sunrise Children's Services, bring this lawsuit alleging improper billing for telecommunications services by Defendant, Windstream Kentucky East, LLC ("Windstream"). Defendant has moved for summary judgment on all claims, and Plaintiffs have moved for partial summary judgment as to Counts 1 and 2 of the Complaint.[1] For the reasons that follow, the Court will grant Plaintiffs' motion for summary judgment only as to Counts 1 and 2 on the question of liability and deny Defendant's motion for summary judgment. The Court will reserve judgment on an amount certain for damages.

I.

This case focuses on Windstream's flow-through to customers of Kentucky's Gross Revenues Tax ("GRT") in the form of a Gross Receipts Surcharge ("GRS") on customers' bills. The Court, in the interests of efficiency and brevity, incorporates by reference the factual background from its April 30, 2010 Memorandum Opinion. Additional facts which have surfaced since the April opinion, are set forth, where relevant, below.

---

[1] Count III alleges Defendant violated KRS § 278.160(2) by assessing the GRS without filing a tariff with the Kentucky Public Service Commission ("PSC"). This Count was stayed pending the PSC's decisions regarding (1) whether the GRS should be filed in state tariffs; and (2) whether the "local taxing authority" language of Windstream's tariff sufficiently encompasses the GRT imposed by KRS § 136.616.

A motion for summary judgment should be granted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute exists if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "On summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962). While the moving party must demonstrate that no genuine issue of material fact exists, in response, the non-moving party must move beyond the pleadings and present evidence in support of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Conclusory assertions, supported only by Plaintiff's own opinions, cannot withstand a motion for summary judgment." *Arendale v. City of Memphis,* 519 F.3d 587, 605 (6th Cir. 2008).

II.

Both Defendant and Plaintiffs have moved for summary judgment regarding Count l. Plaintiffs allege Defendant violated 47 U.S.C. § 203(c), the Communications Act of 1934, by: (1) charging the GRS to customers prior to filing it within Windstream's FCC tariffs; and (2) assessing the GRS at a higher rate than set forth in the FCC tariffs once filed. Defendant counters that the GRS does not constitute, nor is related to, a "rate" or "service" and is therefore not subject to federal tariffing.

A.

The plain language of Section 203 mandates that telecommunications carriers file tariffs (schedules of rates) with the FCC "showing all charges for itself and its connecting carriers for interstate . . . communication." 47 U.S.C. § 203(a). Subsection (c) prohibits a carrier from

charging, demanding, or collecting an amount not represented in its tariffs. Thus, a service or rate that falls within the regulatory ambit of federal tariffing cannot be charged or collected unless appropriately filed. The initial question presented here is whether the GRS is governed by federal tariffs.

Some twenty years ago the FCC grappled with this issue as applied to a surcharge very similar to the one here. *Irwin Wallace v. AT&T Commc'ns of the S. States, Inc.,* 6 FCC Rcd 1618 (1991). There, a Florida statute imposed a gross revenue tax on all telecommunications carriers. *Id*. at 1618. Carriers, including AT&T, subsequently passed the tax through to their customers as a separate line-item charge on bills. Although the enabling statute permitted carriers to recover the tax from customers, it was silent as to the character of the tax (whether it constituted a rate or excise or sales tax). AT&T collected the tax from its customers but failed to report the charge in its federal tariffs. Plaintiff brought suit alleging a violation of Section 203 because AT&T had failed to update its tariffs to include the gross revenue tax surcharge.

AT&T argued that Section 203 was not implicated because the gross revenue tax surcharge was "extrinsic to the communications services regulated by the Commission," and thus not subject to tariffing. *Id*. AT&T also asserted that there was "no reason to require federal tariffing before it [could] flow through taxes to customers in accordance with state or [sic] federal laws that impose[d] the tax." *Id*. Complainants countered that since the tax was one imposed directly on carriers, not on customers, the subsequent flow-through constituted a surcharge being imposed on customers by AT&T. As a surcharge, it was subject to federal tariffing like any other rate or charge assessed to customers.

After considering these arguments, the FCC held the gross receipts tax constituted a rate

3

and was subject to tariffing requirement. As the Commission explained:

> . . . [T]he Florida statute makes it clear that *its gross receipts tax is a tax on the telecommunications carrier, not on the end-user. Therefore, the tax is not 'extrinsic' to the communications services regulated by this Commission,* as argued by AT&T, but is one of many expenses affecting the carrier's charges to its customers. Accordingly, AT&T has not supplied any basis for not tariffing its gross receipts tax surcharge, and we find that its *imposition of a gross receipts tax surcharge on the end user before the tariff authorizing such a charge became effective was a violation of Section 203 of the Act.*

*Id.* at 1619 (emphasis added).

The FCC's analysis applies directly to the Court's decision today. First, the character of the gross receipts tax in *Irwin Wallace* was strikingly similar to Kentucky's GRT. Namely, *Irwin Wallace* involved a gross revenue tax imposed directly on telecommunications carriers, not end users. *Id.* Second, the Florida statute, like KRS § 136.616, allowed carriers to recover the gross revenue tax from customers.[2] Third, and perhaps most significant, the FCC determined that the Florida tax surcharge constituted a rate because it affected carriers' charges to customers. Since the surcharge constituted a rate, it fell within the regulatory boundaries of the Commission and was subject to tariffing. *Id.*

The United States Supreme Court has explained that our courts should follow an agency's statutory interpretation where Congress has failed to directly address an issue and "the agency's answer is based on a permissible construction of the statute." *Jewish Hosp., Inc. v. Sec'y of Health and Human Servs.*, 19 F.3d 270, 273 (6th Cir. 1994). The FCC is charged with executing and enforcing the Communications Act which includes regulation of tariffs. *MCI*

---

[2]Although the Florida statute allowed carriers to recover the tax via line-item charges and the Kentucky statute formerly prohibited this procedure, the difference is immaterial in determining whether the Kentucky GRS constitutes a rate and is thus subject to tariffing.

*Telecomm. Corp. v. F.C.C.*, 765 F.2d 1186, 1192 (D.C. Cir. 1985). Furthermore, *Irwin Wallace* has yet to be challenged, leaving the Court no reason to reject its decision[3]. The *Irwin Wallace* decision appears reasonable. No one has challenged it. Congress has not readdressed it. For all the reasons stated above, the Court agrees with its logic and believes that it should govern this case.

Windstream's arguments closely mirror those that AT&T advanced in *Irwin Wallace*. As a way of side-stepping the FCC's *Irwin Wallace* imperative, Defendant agues that Plaintiffs purchase only local services, which are subject to *intra*state regulation and thus not subject to federal tariffing. However, as part of her local telecommunications services, Bowers does pay a Subscriber Line Charge ("SLC"), which *is* subject to Windstream's federal tariffs. Defendant argues that failure to tariff the GRS is lawful because the "the only tariffed charged (*e.g.*, the SLC) is assessed at the rate set forth in the tariffs." Defendant's argument fails because it is based on the incorrect premise that the GRS is also not a "tariffed charge." Thus, Bowers' particular circumstances do not change either the Court's analysis or the result.

B.

As a component of Count 1, Plaintiffs claim that Defendant also violated 47 U.S.C. §203(c) by assessing the GRS at a rate higher than the legislature authorized. Defendants added the GRS to customers' bills in June of 2007, but did not file it in Windstream's federal tariffs until August of 2008. Prior to and after being filed, the GRS rate fluctuated. Between June of

---

[3]After *Irwin Wallace* was decided, AT&T petitioned the FCC for reconsideration of its determination that the Florida GRS was subject to tariffing. Upon reconsideration, the FCC upheld its holding. Even if *Irwin Wallace* were challenged, its determination would be set aside only if found to be unreasonable. A challenge to an FCC decision would be properly brought before the United States Court of Appeals which has jurisdiction to review the Commission's final decisions. *See Jewish Hosp., Inc. v. Sec'y of Health and Human Servs.*, 19 F.3d 270, 273-74 (6th Cir. 1994)

2007 and June of 2010, customers were charged varying percentages despite that during this same period, the Kentucky GRT (imposed directly on Windstream) remained unchanged at 1.31%. Windstream's federal tariffs, once revised to include the GRS in August of 2008, also listed the GRS rate at 1.31%.

Plaintiffs allege that the assessment of varying percentages contradicted Windstream's tariffs and therefore violated the Filed Rate Doctrine. Defendant explains the rate discrepancies not as overcharges, but as exact recovery for the 1.31% Kentucky GRT because these varying percentages were calculated to retroactively recover Windstream's total GRT payments made since the original enactment of the tax. The Court will address each party's arguments below.

Section 203(c), modeled after the Filed Rate Doctrine, states that a telecommunications carrier may not "charge, demand, collect, or receive a *greater or less or different compensation . . . than the charges specifies in the schedule then in effect.*" 47 U.S.C. § 203(c)(1) (emphasis added). The doctrine mandates that "[u]nless and until a utility rate is set aside or revised, the rate remains for all purposes, *the legal rate*." *Daleure v. Kentucky*, 119 F. Supp. 2d 683, 689 (W.D. Ky. 2000). Thus, a tariffed rate is one "which those governed by it are entitled, even required, to charge," and the tariff itself "establishes the lawfulness of the rate." *Id*. (Citation omitted). Any assessment of charges or rates in conflict with a carrier's filed rates violates its tariffs and Section 203. The Filed Rate Doctrine, more than a century old today, remains firmly rooted and is strictly enforced.[4]

---

[4]As explained by this Court in *Daleure*, 119 F. Supp. 2d at 689:
> The Supreme Court has had numerous opportunities to overrule, modify or water down the filed rate doctrine. On those occasions it has reconsidered all the arguments which suggest that the doctrine was either ill-advised or is now outdated. Most striking is the Court's consistent refusal to back away from the rule. The Supreme Court has at least arguably extended the scope of the filed

Here, Defendant's filed GRS rate of 1.31% differs from the rate that has been charged to customers over the last three years. Defendant asserts that the discrepancy accounts for the recovery of its total GRT payments tendered to the State since introduction of the tax. Unfortunately, this explanation does not excuse compliance with Section 203 and the Filed Rate Doctrine require. Therefore, notwithstanding Defendant's authority to collect 1.31% on all gross revenues once its tariffs were updated, such charges should have been assessed equally and uniformly, and in compliance with the filed rate. Any deviation from the filed rates will constitute a violation of Section 203 and the Filed Rate Doctrine.[5]

C.

In response to the allegations in Count 1, Defendant asserts the doctrines of voluntary payment and waiver bar Plaintiffs' claims. Both Plaintiffs and Defendant acknowledge that the Filed Rate Doctrine overrides equitable defenses, as well as other claims that might repudiate a filed tariff. *See AT&T v. Cent. Office Tel., Inc.*, 524 U.S. 214 (1998); *Maislin Indus v. Primary Steel, Inc.*, 497 U.S. 116 (1990); *Brandenburg Tel. Co. v. Sprint Commc'ns Co.*, 2010 WL 881735, *2 (W.D. Ky. 2010). Consequently, Windstream's defenses here cannot supersede the Filed Rate Doctrine.

Having concluded (1) the GRS constitutes a rate subject to tariffing; (2) Windstream failed to file the GRS within its federal tariffs; and (3) Windstream's defenses fail, Plaintiffs are

---

rate doctrine as recently as 1998. See *AT&T v. Cent. Office Tel. Inc.*, 524 U.S. 214 (1998). Because the Supreme Court seems to have refused every opportunity to change or qualify the filed rate doctrine, this Court should think deeply before avoiding its application without good reason.

[5]Defendant has assessed the GRS on customers at various rates, possibly resulting in both an overall net discrepancy (if the total amount recovered for the GRT exceeds the amount Defendant has paid to the State) as well as individual customer discrepancies (if an individual customer has been charged either more or less than 1.3%). Either or both of these discrepancies would constitute a violation of Section 203 and the Filed Rate Doctrine.

7

entitled, on the question of liability, to partial summary judgment as to Count 1 of the Complaint. On the related issue of damages, the Court is unable to determine an appropriate amount. Until Defendant produces specific records of the GRS collected from all customers, on all services, and the GRT paid to the State, the Court will reserve judgment on an award of damages.

III.

Both Defendant and Plaintiffs have also moved for summary judgment regarding Count 2, violation of 47 U.S.C. § 201(b) and § 207 based on the same facts and allegations in Count 1. Section 201(b) states: "All charges, practices, classifications, and regulations for and in connection with such communication service, shall be just and reasonable, and any such charge, practice, classification, or regulation that is unjust or unreasonable is hereby declared to be unlawful."

Based on the same conduct described above in Count 1, namely Defendant's assessment of the GRS inconsistent with its filed tariffs, Plaintiffs allege Windstream's conduct is "unjust, unreasonable, and unlawful" under the statute. Having already concluded that Windstream's conduct violated Section 203, the Court also grants Plaintiffs' motion for partial summary judgment as to Count 2 regarding the question of liability. Again, however, the Court will reserve judgment on the amount of damages.

IV.

Defendant has moved for summary judgment regarding Count IV which alleges a violation of 47 U.S.C. § 201(b) and federal "Truth-in-Billing" rules pursuant to 47 C.F.R. § 64.2401 based on Defendant's assessment of the GRS at a rate higher than imposed on Windstream by the State. Section 201(b) mandates that all charges be "just and reasonable." Additionally, 47 C.F.R. § 64.2401(b) requires that "charges contained on phone bills [] be accompanied by a brief, clear, non-misleading description of the service or services rendered." The FCC has held that misleading or deceptive billing information is unjust and unreasonable and, therefore, violates Section 201(b). Thus, the critical question here is whether Defendant's assessment of the GRS was either unjust and/or unreasonable or misleading and/or deceptive.

Defendant argues that its assessment of the GRS is neither misleading nor unreasonable because it has not imposed the GRS at a rate higher than charged by the State. Defendant argues that it only applies the GRS to services subject to the GRT, and it has in fact collected less through the GRS than it has paid to the State. Essentially, Defendant argues it has not violated the "Truth-in-Billing" rules unless it utilized the GRS to generate profits (which would constitute unreasonable or misleading billing).

Plaintiffs claim that Defendant collected the GRS at a rate higher than that imposed on Windstream by the State and thereby misled customers regarding the amount and nature of the charge. Even after filing the GRS within its federal tariffs, Defendant continued assessing the charge at varying rates, representing to customers that the charges were lawful and in accordance with the amount of tax imposed on Windstream and as represented in its tariffs. Plaintiffs conclude that any amounts exceeding the then-imposed tax on Windstream constituted

9

unreasonable charges.

The record and discovery reveal that Defendant did assess the GRS at rates different from that taxed by the State (1.3%). Whether and to what extent these discrepancies amount to unjust or unreasonable charges remains unanswered. Defendant has not established that it was either permitted to assess the rate unequally as to individual customers or that it was reasonable to do so. Defendant asserts that the GRS was assessed unequally to recover not only the GRT, but also uncollected bad debts, settlements of service disputes that affect the GRS on those services, and other expenses. While Defendant's accounting and collection of the GRS might prove to be just and reasonable given these factors, the Court cannot draw that conclusion now. Furthermore, this determination may turn on the specific amounts and percentages collected by Defendant which have yet to be produced. For these reasons, Defendant's motion for summary judgement regarding Count IV is denied.

V.

Defendant has also moved for summary judgment as to Counts V, VI, and VII which allege, respectively, a violation of the Kentucky Consumer Protection Act ("CPA") and the Kentucky "Filed Rate Doctrine"; negligent misrepresentation; and conversion. These claims arise from Defendant's alleged assessment of the GRS on services not subject to the GRT.

A.

The Kentucky CPA was designed to provide "the broadest possible protection from illegal acts" to consumers. *Clark v. BellSouth Telecomm., Inc.*, 461 F. Supp 2d 541, 549 (W.D. Ky. 2006). To demonstrate a violation of the Act, a plaintiff must show a carrier's "activity was unfair, false, misleading, deceptive, and unlawful." *Id.* Often, a violation of the Act will double

as a violation of Kentucky's "Filed Rate Doctrine" which requires that carriers charge customers only the rates included in their state tariffs.

A claim for negligent misrepresentation similarly requires showing that a defendant failed to act reasonably and thereby caused a plaintiff pecuniary loss. In 2004, the Kentucky Supreme Court adopted the definition of "negligent misrepresentation" from the Restatement (Second) of Torts § 552. It provides:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*E.I. DuPont de Numours and Co. v. Mech. Integrity, Inc.*, 2009 WL 3754206, *3 (W.D. Ky. 2009). Such loss could be attributable to charging a rate not filed in tariffs, overcharging for a rate, or incorrectly characterizing a charge.

Finally, to successfully assert a claim of conversion, a plaintiff must show "(1) [she] had legal title to the converted property; (2) [she] had possession of the property or the right to possess it at the time of the conversion; (3) the defendant exercised dominion over the property in a manner which denied the plaintiff's rights to use and enjoy the property and which was to the defendant's own use and beneficial enjoyment; (4) the defendant intended to interfere with the plaintiff's possession; (5) the plaintiff made some demand for the property's return which the defendant refused; (6) the defendant's act was the legal cause of the plaintiff's loss of the property; and (7) the plaintiff suffered damage by the loss of the property." *Madison Capital Co., LLC v. S&S Salvage, LLC*, 765 F. Supp. 2d 923, 931-32 (W.D. Ky. 2011) (citations

omitted).

B.

Plaintiff alleges that Defendant has assessed the GRT on "DSL Ultra" (an internet access service), the "Protection Plus Plan" (an inside wire maintenance plan), and the "Deregulated Administration Fee." According to Plaintiffs, these services do not constitute "communications services" and are not subject to the 1.3% GRT collected by the State; Thus, Defendant's subsequent imposition of the GRS on these services would violate Kentucky's Consumer Protection Act. Moreover, representing that these services are subject to the GRS would constitute negligent misrepresentation and conversion of the overcharged and collected monies.

Defendants respond that Counts V, VI and VII must fail because Windstream East applied the GRS only to items for which it has paid Kentucky's gross revenues tax, and furthermore, Plaintiffs agreed to these charges by committing to Windstream's Terms and Conditions, which provide that customers are responsible for surcharges assessed in connection with services they receive.

KRS § 136.616 imposes a tax on the gross revenues received from "multichannel video programming service" and "communications services." Defendant's essential argument is that it only imposes the GRS on services where the State collects the GRT. Neither side argues extensively about the validity of imposing the GRS on various services. It is clear that telephone and cable television services do fall within GRT's terms. Wire maintenance plans may fall within the GRT as well. On the other hand, internet services seem less likely to GRT application.

Regardless of the legal arguments, neither of the parties have established whether and to

what extent these services are actually subject to the GRT and thus properly subject to the GRS. In fact, discovery thus far reveals conflicting accounts regarding how the GRS has been assessed and which particular components of specific services are subject to the GRT. None of the memoranda seem to answer whether and to what extent Defendant (1) was permitted to assess the GRS on DSL Ultra, the Protection Plus Plan, and the Deregulated Administration Fee; (2) overcharged the GRS on these services; and (3) misrepresented the nature and amount of the GRS as applied to these services. Because the record lacks support for either sides of these claims, the Court will deny Defendant's motion for summary judgment regarding Counts V, VI, and VII.

The Court being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Plaintiff's motion for partial summary judgment as to Counts 1 and 2 is SUSTAINED.

IT IS FURTHER ORDERED that Defendant's motion for summary judgment is DENIED.

The Court will schedule a conference in the near future to clarify Counts V, VI, and VII and discuss procedures for resolving the remaining issues in the case.

cc:   Counsel of Record