UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| Dana Bowers and Sunrise Children's Services, Inc., on Behalf of Themselves and Others Similarly Situated, | |
| PLAINTIFFS | CIVIL ACTION NO. 3:09-CV-440 |
| v. | ELECTRONICALLY FILED |
| Windstream Kentucky East, LLC, et al. | |
| DEFENDANTS. | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS, APPOINTMENT OF SETTLEMENT CLASS COUNSEL AND SETTLEMENT CLASS REPRESENTATIVES, PROPOSED PLAN FOR  NOTICE TO THE CLASS MEMBERS, AND FAIRNESS HEARING**

Plaintiffs, Dana Bowers and Sunrise Children's Services, Inc. ("Plaintiffs"), on behalf of themselves and all others similarly situated, by counsel, for their Memorandum in Support of Motion for Preliminary Approval of Class Action Settlement with Windstream Kentucky East, LLC and Windstream Kentucky West, LLC ("Windstream" or "Defendants"), and for Conditional Certification of the Settlement Class, Appointment of Settlement Class Counsel and Settlement Class Representatives, Proposed Plan for Notice to the Class Members, and  Fairness Hearing, state as follows:

**INTRODUCTION**

On May 24, 2013, the parties filed their Stipulation of Settlement Agreement and Release (hereinafter collectively referred to as "the Agreement" or the "Settlement Agreement") with the Court.  Plaintiffs incorporate by reference herein the terms of the Agreement; request the

certification of the Settlement Class as prescribed in the Agreement; ask that Dana Bowers and Sunrise Children's Services, Inc., be appointed Class Representatives for the Settlement Class and that their counsel be appointed Class Counsel for the Settlement Class; that notice as proposed in the Settlement Agreement [Exhibits B and C thereto] be approved; and that the Court set a fairness hearing in which the Court will consider whether to grant final approval of the Agreement and of Class Counsel's motion for attorneys' fees and incentive awards to the Class Representatives. The Settlement Agreement is the product of arms-length negotiations, and Plaintiffs' counsel, on behalf of the proposed Settlement Class, believe that in light of the costs, risks and delay of continued litigation, balanced against the benefits to the Settlement Class, settlement at this time as provided in the Agreement will be in the best interests of the class and that the Agreement provided herein is fair and reasonable and an adequate and appropriate resolution of this action.

After nearly four years of litigation, the Settlement Agreement provides relief for the hundreds of thousands of class members in Kentucky whom Plaintiffs allege were overcharged since June 2007, when Windstream added a gross receipts surcharge on its Kentucky bills without including the charge in its tariffs. If the Agreement is approved by the Court, the class members will receive shares of a multi-million dollar recovery that is due to the parties' arm's-length negotiations.

## TERMS OF THE PROPOSED SETTLEMENT

The proposed settlement, which is described fully in the Settlement Agreement, provides for substantial relief to the Settlement Class members. The Defendants will make available for payment to the Settlement Class members a total of $7,500,000 cash in the form of refunds or bill credits, and will additionally provide current customers with twelve (12) months of free

Inside Wire Maintenance service, which service presently has a stand-alone price of $5.00 per month per account. If a customer is already subscribed to Inside Wire Maintenance, the customer will receive a bill credit to offset the charge.

The class members' settlement payments and procedures related thereto will be determined according to [1] differences among classes of service affecting the amount of customer bills, and thus affecting the amount of the Kentucky Gross Receipts Surcharge the members are likely to have paid, and [2] the members' status as current or past customers of Windstream. All Settlement Class Members who are current or former customers and who are not carrier customers will receive a one-time lump sum payment in the amount of approximately Ten Dollars ($10.00) if the customer's account is or was a residential account, and approximately Twenty-Five Dollars and Thirty-Five Cents ($25.35) if the customer's account is or was a business account. For Current Customers, the aforesaid amounts shall be issued by Windstream in a bill credit as soon as reasonably possible after the Final Settlement Date, but in no event more than forty-five (45) days after the Final Settlement Date. If a Current Customer terminates service prior to the issuance of this bill credit, that customer will be regarded as a Former Customer and, along with other former customers, will be issued a check by the well-qualified Settlement Administrator, Kurzman Carson Consultants. For the purposes of refunds to former customers, Windstream will deposit funds in an escrow account with the Settlement Administrator within seven (7) days of the Final Settlement Date and the Settlement Administrator shall issue and mail the checks to Former Customers within thirty (30) days thereafter.

The carrier customers who are members of the Settlement Class will receive a one-time lump sum payment of approximately $1,000. Current carrier customers will be issued a bill

credit no later than 45 days after the final settlement date. Former carrier customers will receive the payment by means of a check issued by the Settlement Administrator. The checks issued to customers will include the following language in at least 8 point bold font: "VOID IF NOT CASHED OR DEPOSITED IN 90 DAYS." Funds remaining in the escrow account as a result of customers' failure to cash or deposit their checks will be returned to Windstream.

Above and beyond this compensation to be paid directly to the Settlement Class, and so that the expenses of litigation do not decrease the benefits available to the Settlement Class, Defendants agree to directly pay attorneys' fees to Class Counsel of $2,500,000; incentive payments to the Class Representatives not to exceed $5,000 each, both amounts to be subject to Court approval; and up to $350,000 in reasonable administration costs. These payments were negotiated separately from the compensation for the Settlement Class.

In exchange for the consideration made by Defendants, class members who do not opt out of the settlement release the Defendants from any and all liability for past conduct related to the gross receipts surcharge as set forth in the Settlement Agreement.

The proposed settlement is the product of an extensive, arms-length negotiation process conducted between the parties and their attorneys since early in this litigation. This negotiation process consisted of numerous telephone conferences between the parties; requests by the Class Representatives and their counsel for (and production by the Defendants and their counsel of) various categories of data; review and analysis of this data by the Class Representatives' attorneys; and one separate day-long, in-person negotiation session between counsel for and representatives of each side.

As a result of their efforts, the Class Representatives and their counsel have more than sufficient information to recommend this Settlement to the Court for preliminary approval. The

Court should issue its preliminary approval and set a Fairness Hearing.

**ARGUMENT**

**I. THE PROPOSED PROCEDURES AND THE SETTLEMENT AGREEMENT MEET THE STANDARDS APPLICABLE TO PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS.**

The law reflects a public policy strongly favoring the settlement of litigation, particularly class actions. *See Ford Motor Co. v. Mustangs Unlimited, Inc.*, 487 F.3d 465, 469 (6th Cir. 2007)("public policy strongly favors settlement of disputes without litigation") (internal quotation omitted); *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 903 (S.D. Ohio 2001) ("the law generally favors the settlement of complex class actions"); *Steiner v. Fruehauf Corp.*, 121 F.R.D. 304, 305 (E.D. Mich. 1988), *aff'd sub nom. Priddy v. Edelman*, 883 F.2d 438 (6th Cir. 1989) ("case law favors the voluntary settlement of class actions").

Pursuant to Fed. R. Civ. P. 23, settlement of a class action requires court approval. *See* Fed. R. Civ. P. 23(e). A court may approve a settlement that will bind class members "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The procedure for approving a class action settlement includes three steps: (1) the court must preliminarily approve the settlement; (2) the members of the class must then be given notice of the proposed settlement; and (3) the court must hold a hearing to determine whether the proposed settlement is fair, reasonable and adequate. *See Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 565-66 (6th Cir. 2001); *New England Health Care Emp. Pens. Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 630-31 (W.D. Ky. 2006).

The first step is satisfied, and preliminary approval is warranted, where the court is persuaded that the "settlement is within the range of possible approval." *Date v. Sony Electronics, Inc.*, No. 07-cv-15474, 2008 U.S. Dist. LEXIS 56458, *2 (E.D. Mich. July 25,

2008). The burden on the movant at this initial stage is low, and the purpose of preliminary approval is to identify whether the settlement is so facially invalid that it would make "notice to the class, with its attendant expenses, and a hearing . . . futile gestures." 4 *Herbert Newberg & Alba Conte, Newberg on Class Actions* § 11:25 (4th ed. 2002). A full evaluation is reserved for the final approval stage, after notice has been given and class members have had an opportunity to voice their views of the settlement and to exclude themselves from the settlement. *See* 3B Moore's Federal Practice 9 23.80[2.-1], at 23-479 (2d Ed.)

Preliminary approval is appropriate here because the Agreement provides a significant recovery for the class. The benefits of this recovery must be compared to the risk that a protracted and contested period of litigation, including trial and likely appeals in multiple fora – which could possibly extend for many years – might lead to a smaller recovery, or no recovery, against the Defendants. In addition, there are no grounds to doubt the fairness of the Settlement: there are no obvious deficiencies and there is no evidence of collusion. As noted above, litigation of this matter has been hard-fought and the Settlement was reached only after extensive arms-length negotiations.

## II. PRELIMINARY CERTIFICATION OF A SETTLEMENT CLASS IS APPROPRIATE, AND THE PROPOSED SETTLEMENT CLASS SATISFIES THE REQUIREMENTS OF FED. R. CIV. P. 23(a).

As this Court previously concluded in its Memorandum Opinion of July 10, 2012 [#102], the class proposed for certification by Plaintiffs meets the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a). The definition of the class as certified by the Court in its Order of July 10, 2012, is as follows:

> All individuals and entities, including Interexchange Carriers and End Users who, for any time during the period beginning June 1, 2007 to the present, were "Customers" for Interstate access services provided pursuant to Windstream Telephone System Tariff No. 6 (or predecessor Tariff Nos. 1 and 3 applicable to

> Windstream East and West, respectively, hereinafter collectively "Tariff No. 6"), including:
>
> a. Customers who purchased end user access services pursuant to Windstream Telephone System Tariff No. 6:
>
> b. Customers who purchased switched access services pursuant to Windstream Telephone System Tariff No. 6; and/or
>
> c. Customers who purchased special access services pursuant to Windstream Telephone System Tariff No. 6;
>
> *and* who
>
> (i) paid any charges for a "Kentucky Gross Receipts surcharge" or similarly designated charge that Windstream Kentucky East, LLC or Windstream Kentucky West, LLC ("Windstream") applied to the Customer's billings from June 1, 2007 through August 6, 2008; and/or
>
> (ii) paid any charges for a "Kentucky Gross Receipts Surcharge" or similarly designated charge that Windstream applied to the Customer's billings in an amount in excess of 1.31% after August 6, 2008;
>
> *but excluding* Windstream, its subsidiaries, affiliates, officers and directors; any entity in which Windstream has a controlling interest; and the legal representatives, heirs, successors and assigns of any such excluded party.

Order dated July 10, 2012 [#101].

The Court also ruled on July 10, 2012, in that same Memorandum Opinion, at 16, that the class as defined above satisfies Rule 23(b)(3) in that the questions of law or fact common to class members predominate over questions affecting only individual members, and that a class action is superior to other available methods for adjudicating the controversy. The issue at the heart of all class members' grievance is the same: whether the gross receipts surcharge was wrongfully charged. *Id.*

All of these findings and conclusions apply equally to the proposed Settlement Class, which is defined in the Settlement Agreement, Section II AA, as follows:

> [A]ll persons or entities who were customers of Windstream Kentucky East, LLC and Windstream Kentucky West, LLC at any point between June 1, 2007 and May 29, 2012 and were assessed a Kentucky Gross Receipts Surcharge. Excluded from the Settlement Class are Carrier Customers that have executed settlement agreements that release claims related to the Kentucky Gross Receipts Surcharge. The Carrier Customers excluded from the Settlement Class are listed in Exhibit F filed under seal and attached hereto, and inasmuch as they are not bound or otherwise affected by this Settlement Agreement, they will not receive notice described herein unless otherwise ordered by the Court.

The definition of the Settlement Class as proposed herein differs from the definition of the class previously certified by the Court only in that it does not expressly exclude Windstream entities and officers from the class and does exclude those carrier customers that are represented by Windstream to have released their claims related to the Kentucky Gross Receipts Surcharge through executed settlement agreements. *See* Exhibit F to Settlement Agreement. As these carrier customers will not be bound by the terms of the Settlement Agreement, the Settlement Agreement does not contemplate that notice will be sent to them unless this Court directs otherwise.

The Settlement Class as proposed in the Settlement Agreement should be conditionally certified subject to consideration at the Fairness Hearing.

### III. THE FORM AND MANNER OF NOTICE TO THE CLASS PROPOSED BY THE CLASS REPRESENTATIVES IS SUFFICIENT.

When a court certifies a class under Rule 23(b)(3), notice must be served on all class members who can be identified through reasonable efforts. *See* Fed. R. Civ. P. 23(c)(2)(B). Rule 23(e) also instructs courts to "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). "[D]ue process does not require actual notice, but rather a good faith effort to provide actual notice." *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 177 F.R.D. 216, 231 (D. N.J. 1997) (citing *In re Cherry's*

*Petition to Intervene*, 164 F.R.D. 630, 636 (E.D. Mich. 1996)). Here, notice is being given directly to customers in the best manner practicable. The standards are more than met.

The parties have submitted two forms of notice to the Court for approval: a Long-Form Notice [Exhibit C to the Settlement Agreement] and a Short Form Notice [Exhibit B to the Settlement Agreement]. The short form notice will be sent as a separate bill insert to Windstream's current customers who are Settlement Class members, and will be mailed by the Settlement Administrator to Settlement Class members who are former Windstream customers. These notices will be sent to the last known mailing address of those current customers whose addresses may be identified through reasonable efforts. This is a well-established means of providing legally sufficient notice. *See Wade v. Kroger Co.*, 2008 U.S. Dist. LEXIS 95334, 3-4 (W.D. Ky. Nov. 20, 2008) (finding that mailed notice of class action settlement combined with Internet posting of consent decree fully complied with requirements of Fed.R.Civ.P. 23(e)(1)(B) and due process).

The content of a settlement notice "need only be reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections." *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 527-28 (D. N.J. 1997), *rev'd on other grounds*, 133 F.3d 225 (3rd Cir. 1998). The Long-Form Notice in this case provides a detailed description of the action and the proposed Settlement; the date, time and place of the Formal Fairness Hearing; the disbursement amounts; the application of Class Counsel for payment of their attorneys' fees and expenses; the address of Class Counsel; the procedure for making inquiries to Class Counsel; and information about the options available to putative Class members, including the right to object or opt out. The short form provides similar information in summary form, gives the reader

the website address, www.KYGRSclassaction.com, upon which the Long-Form Notice will be published, and provides a telephone number to call for further information.

In short, the notice proposed to be provided to the Settlement Class pursuant to the terms of the Agreement is the best means of giving notice practicable under the circumstances and constitute valid, due, and sufficient notice to the Settlement Class in accordance with the requirements of applicable law, including the Due Process Clause of the United Constitution. It should be approved.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter its order in substantially the form provided by the parties as Exhibit A to the Settlement Agreement, preliminarily approving of the settlement, conditionally certifying the settlement class, appointing settlement class counsel and settlement class representatives, approving the proposed plan to give notice to the settlement class members, setting a fairness hearing, and adopting the procedural dates proposed in this motion.

Respectfully submitted,

/s/ David T. Royse
David T. Royse
Douglas F. Brent
Deborah T. Eversole
STOLL KEENON OGDEN PLLC
2000 PNC Plaza
500 West Jefferson Street
Louisville, KY 40202

Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

  I hereby certify that I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send notice of the filing electronically to designated counsel.

/s/ David T. Royse
David T. Royse
