UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:09-CV-440-H

DANA BOWERS, et al.
PLAINTIFFS

V.

WINDSTREAM KENTUCKY EAST, LLC, et al.                               DEFENDANTS

**MEMORANDUM OPINION AND ORDER
GRANTING FINAL APPROVAL OF
CLASS ACTION SETTLEMENT**

Following over four years of hard fought litigation and several months of arms length settlement discussions, the parties have agreed upon a proposed Settlement Agreement that brings substantial relief to all Settlement Class Members as defined in the Agreement. The Settlement Agreement covers all claims asserted against Defendants. In exchange for the benefits provided to the Settlement Class, the Settlement Agreement provides for the release of any claims against Defendants that have been asserted in this Action.

The Class Representatives have moved the Court for final approval of the Settlement Agreement entered into with Defendants, Windstream Kentucky East, LLC and Windstream Kentucky West, LLC. The Court has reviewed Class Representatives' motion and has considered all relevant objections filed with the Court. In addition, on October 31, 2013, the Court conducted a Fairness Hearing on the proposed Settlement and invited all persons present to comment. The Court now has sufficient information to determine whether this Class Action Settlement is fair, reasonable and adequate in all respects. For the reasons that follow, the Court will approve this proposed settlement.

I.

This Court granted preliminary approval of the proposed Settlement on June 13, 2013. Following preliminary approval, KCC (the Settlement Administrator selected by the parties and approved by the Court) and Windstream through joint efforts as outlined in the Settlement Agreement mailed Notice of the Settlement to all potential class members via first-class mail in the form and manner approved by this Court. In addition, the Settlement Agreement and relevant motions and court orders were made available on a website created under the direction of the parties and administered by KCC.

The Court finds that this notice process is adequate under Fed. R. Civ. P. 23 and the standards of due process, because it was directed in a reasonable manner to all prospective Settlement Class Members who would be bound by the Settlement Agreement and, in a manner that could be understood by the average prospective Settlement Class Member, fairly apprised the prospective Settlement Class Members of the terms of the proposed Settlement Agreement and their options with respect to their decision whether to join in the Settlement Class. *See, e.g., Int'l Union v. GMC*, 497 F.3d 615, 630 (6th Cir. 2007).

II.

The Class Action Fairness Act ("CAFA"), requires that each defendant provide notice of a proposed class action settlement to "appropriate" federal and state officials. 28 U.S.C. § 1711. On June 3, 2013, Defendants sent notice to the appropriate federal and state officials as defined in 28 U.S.C. § 1711. Along with that notice, Defendants sent copies of the Complaint, the Notice of Hearing on Plaintiffs' Motion for Preliminary Approval of the Settlement Agreement, and Plaintiffs' Motion for Preliminary Approval of the Settlement Agreement, including the

proposed Notice to the Settlement Class and a copy of the proposed Settlement Agreement. *See* 28 U.S.C. § 1715(b). The Court finds that Defendants have fully complied with the CAFA notice requirements.

### III.

Fed. R. Civ. P. 23 states that the Court may approve a settlement that would bind class members only after a hearing and a determination that the settlement is fair, reasonable and adequate.

The Sixth Circuit has identified seven factors that should aid a court in its determination of whether a class action settlement is fair, reasonable, and adequate: (1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest. *Int'l Union*, 497 F.3d at 631. No one of these factors is dispositive. Rather all are to be weighed and considered in light of the particular demands of this case. *See, e.g., Granada Investments, Inc. v. DWG Corp.*, 962 F.2d 1203, 1205-06 (6th Cir. 1992).

### A.

The Court finds no fraud or collusion within or around this Settlement Agreement. In the absence of evidence to the contrary, the Court may presume that no fraud occurred and that there was no collusion between counsel. In the absence of evidence to the contrary, a court should presume that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion. *Int'l Union*, 497 F.3d at 628, *see also In re Telectronics Pacing Sys.*, 137 F.Supp.2d 985, 1008, 1018 (S.D. Ohio 2001) (citing Herbert

Newberg & Alba Conte, *Newberg on Class Actions* § 11.51 (3d ed. 1992)).

This case was filed in this Court over four years ago. The parties have engaged in extensive motion practice, including the filing of multiple briefs on motions to dismiss and on motion for class certification. The parties exchanged documents and depositions were taken of the Class Representatives and of representatives of Defendants.

The Settlement Agreement also is the product of arm's-length, good-faith settlement negotiations. The parties engaged in several months of arms' length settlement discussions. Accordingly, the Court finds that the evidence before the Court indicates that the risk of collusion among counsel is non-existent.

B.

In evaluating a proposed class settlement, the Court must also weigh the risks, expense and delay the plaintiffs would face if they continued to prosecute the litigation through trial and appeal. *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 523 (E.D. Mich. 2003); *Telectronics*, 137 F.Supp. 2d at 1013. This case was extremely complex, both factually and legally. It has already been the subject of numerous lengthy opinions by this Court involving the most complex matters. To litigate this further on Plaintiffs' part would only risk losing many of their already hard fought legal victories. The Court concludes that this factor weighs heavily in favor of finding the settlement fair and reasonable.

C.

Although the amount of discovery completed is a factor to be considered in the settlement approval process, there is no minimum or definitive amount of discovery that must be undertaken to satisfy this factor. *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991)**.**

Here, in connection with the litigation, the parties engaged in significant investigation and discovery in this matter, including exchange of documents, depositions of Class Representatives and Defendants' personnel. Finally, the parties engaged in extensive, arm's-length negotiations for over four months, which also allowed the parties to fully explore their respective factual and legal positions.

All this information ultimately allowed the parties to frankly evaluate the merits of and risks inherent in their respective cases and to determine an appropriate settlement value. Accordingly, the formal and informal discovery exchanged by the parties was thorough and appropriately tailored to allow the parties to determine not only an overall settlement amount, but to fairly and adequately determine an allocation of that amount for the Settlement Class Members.

D.

"The likelihood of success . . . provides a gauge from which the benefits of the settlement must be measured." *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984). The risks associated with further litigation were not trivial. Further litigation would more likely expose Plaintiffs to greater risk than it would increase their recovery. Accordingly, the amount and nature of the Settlement Agreement appear to be a reasonable and appropriate tradeoff for the elimination of the risk associated with some of the asserted claims in this Action.

In deciding whether a proposed settlement warrants approval, "[t]he Court should also consider the judgment of counsel and the good faith bargaining between the contending parties." *Rankin v. Rots*, 2006 U.S. Dist. LEXIS 45706, at *9 (E.D. Mich. June 28, 2006). The informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits

of protracted litigation are entitled to great deference. *See, e.g., UAW v. GMC,* 2006 U.S. Dist. LEXIS 14890, at *57 (E.D. Mich. Mar. 31, 2006); *see also Stewart v. Rubin*, 948 F.Supp. 1077, 1087 (D.D.C. 1996).

Class Counsel are experienced counsel who have litigated complex class actions before. Class Counsel did not rush to settlement, but rather engaged in thoughtful, narrowly-tailored discovery that would allow them to appropriately analyze the relative strength of the claims presented, the scope of potential damages, and to make an informed demand. This required a considerable amount of time, thought, and effort.

E.

Lastly, the Court notes that there is a federal policy favoring settlement of class actions. *See Int'l Union*, 497 F.3d at 632. The Court finds that it is a fair and reasonable settlement of a bona fide dispute, and the balance of factors weighs in favor of approval of this settlement. The Court can find no principled basis for not adhering to that policy in this matter. In addition, the conservation of the Western District of Kentucky's judicial resources is substantial. The Court therefore finds that the public interest warrants approval of the Settlement.

IV.

The Settlement Agreement provides that Defendant shall pay $7,500,000 to Settlement Class Members in the form of refunds or bill credits. Defendants will provide certain other direct and indirect benefits to its current customers. The value of which could exceed $10,000,000. Defendants have agreed to pay attorney's fees to Class Counsel in the amount of $2,500,000 subject to Court approval. Defendants will also pay all the entire administrative expenses of the settlement.

The Settlement provides that the 210,000 current residential customers and the 310,000 former residential customers receive approximately $10.50 each; that 44,000 current business customers and the 24,000 former business customers receive approximately $25.75 each; and that the 200 other carrier service providers receive approximately $1,400 each. The amount of these payments is based upon research to determine the average loss to various categories of customer. The parties and the Court deemed this sufficient because it would be cost prohibitive to determine the exact loss of each individual customer. No one has objected to the settlement and only about 200 individuals opted-out of the settlement.

Current residential customers will also receive a credit for inside wire maintenance over a one year period. Many customers already pay for this service and, therefore, the settlement will save such customers between $30 and $60 over the next year. The others will receive the service now free of charge.

As a part of its examination of a class-action settlement, a court must ensure that the distribution of the settlement proceeds is equitable. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855; *In re Global Crossing Securities and ERISA Litigation*, 225 F.R.D. 436 (S.D.N.Y. 2004); *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231 (D.Del 2002); *In re Lease Oil Antitrust Litig III*, 186 F.R.D. 403 (S.D. Tex. 1999). The Court considers the fairness and reasonableness of the allocation separately from the general settlement terms. *See Crawford*, 2008 U.S. Dist. LEXIS 90070, at *320.

The law does not require pro-rata distribution, and given the time period covered by this Settlement Agreement, the number of current and former customers, the various services received during various time periods, and the difficulty associated with finding accurate records,

exact calculation of the Settlement class's claims may be difficult, if not impossible, and the administrative expense and burden of such calculation would likely outweigh the benefits of settlement. *See Int'l Union*, 497 F.3d at 628. Accordingly, the Court finds that the plan of allocation is fair and reasonable under the circumstances, and approves the allocation plan.

VI.

Pursuant to the Settlement Agreement, Plaintiffs' counsel have moved for attorney's fees and expenses of $2,500,000, also administrative fees of $350,000 and incentive payments to each Class Representative of $5,000. The Court has carefully considered these requests.

The Sixth Circuit Court of Appeals has held that courts should "make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Rawlings v. Prudential Bache Properties, Inc.,* 9 F.3d 513, 516 (6th Cir. 1993), *citing Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161, 166-68 (3rd Cir. 1973). Consequently, courts in the Sixth Circuit consider six factors, known as the "*Ramey* Factors" when considering fee applications:

> (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.

*Moulton v. U.S. Steep Corp.,* 581 F.3d 344, 352 (6th Cir. 2009), *quoting Bowling v. Pfizer, Inc.,* 102 F.3d 777, 780 (6th Cir. 1996). *See also Ramey v. Cincinnati Enquirer, Inc.,* 508 F.2d 1188, 1196 (6th Cir. 1974), *cert. denied,* 422 U.S. 1048 (1975).

As detailed earlier in this Memorandum, counsel have succeeded in obtaining a substantial benefit for a wide range of customers. The public interest is served as well by

clarifying the proper billing procedures. Counsel have carefully documented the value of their services on an hourly basis though their representation was undertaken on a contingency basis.

The nature of the task which confronted counsel in this case was truly daunting. The legal issues were quite complex and disputed. Counsel faced determined and skilled opposition. That Plaintiffs would succeed was never a foregone conclusion and often in doubt. That Plaintiffs were able to ultimately achieve success and negotiate a reasonable settlement is a great tribute to counsel's skill and determination.

The Court concludes that counsel are entitled to the incentive bonus on their attorney's fees. The incentive is justified by the factors mentioned above as well as the huge risk to counsel in taking this case on a contingency basis. To award fees and expenses based on one-third of the direct cash payments credit and rebates in the case is most reasonable and fair. Counsel deserves every penny for their successful efforts.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that:

(1)     The Court has jurisdiction over the subject matter of the Action, Class Representatives, all Settlement Class Members, and Defendants.

(2)     The Settlement is approved as fair, reasonable and adequate, in the best interests of the Settlement Class and non-collusive and consistent and in compliance with all requirements of Due Process and applicable law.

(3)     The motion for final approval of the Settlement Agreement is GRANTED.

(4)     The Plan of Allocation set forth in the Settlement Agreement is APPROVED and the parties are permitted to increase the customer distribution upwards should the

funds become available.

(5) The complaint, which the Court finds was filed on a good faith basis in accordance with Rule 11 of the Federal Rules of Civil Procedure based upon all publicly available information, is hereby DISMISSED AS SETTLED WITH PREJUDICE, with fees and costs to be awarded solely as provided in the Settlement Agreement except that the Court shall retain jurisdiction to the extent necessary to administer and enforce the Settlement Agreement.

(6) Defendants and all Released Parties, as defined in the Settlement Agreement, shall be completely released from all claims that were asserted or could have been asserted in the Action relating to the subject matter of the Action, as defined in the Settlement Agreement, by any Settlement Class Member who is not excluded from the Settlement Class as well as bar and enjoin all Settlement Class Members from asserting claims that were or could have been asserted in the Action against any Released Party.

(7) The Settlement Agreement shall provide the exclusive remedy for Settlement Class Members (and any successors-in-interest) with respect to any and all claims that were asserted or could have been asserted in the Action, as defined in the Settlement Agreement, against Defendants and all Released Parties, as defined in the Settlement Agreement.

(8) Neither the Settlement Agreement nor this Final Order may ever be used for any purpose in any other litigation against Defendants and Released Parties, as defined in the Settlement Agreement, other than to enforce the terms of the Settlement Agreement.

(9) The Court reserves continuing and exclusive jurisdiction over the Parties, as defined in the Settlement Agreement, and Settlement Class Members to administer, supervise, construe and enforce the Settlement Agreement in accordance with its terms for the mutual

benefit of the Parties and Settlement Class Members.

(10) The Court awards administrative expenses in an amount not to exceed $350,000.

(11) The Court approves the requested incentive award of $5,000.00 to be paid to each Class Representative as provided for in the Settlement Agreement. The Class Representatives have been active participants throughout the litigation and settlement process.

(12) The Court awards attorney's fees and expenses to David T. Royse, C. Kent Hatfield, Douglas Brent and Deborah Eversole of the law firm of Stoll Keenon Ogden PLLC in the amount of $2,500,000.

This is a final and appealable order, there being no just cause for delay.

cc: Counsel of Record